434 So.2d 1276 (1983)
C.R. CLARK, et al.
v.
STATE of Louisiana, et al.
No. 82 CA 0943.
Court of Appeal of Louisiana, First Circuit.
June 28, 1983.
Daniel E. Broussard, Jr., Alexandria, for plaintiffs-appellants C.R. Clark, et al.
Robert R. Boland, Jr., Gen. Counsel, Dept. of Civil Service, Baton Rouge, for defendants-appellees State of La., et al.
Before LOTTINGER, COLE and CARTER, JJ.
*1277 CARTER, Judge:
This is an appeal by plaintiffs from a trial court judgment holding that defendants did not unconstitutionally exclude plaintiffs from a pay adjustment put in effect by the Civil Service Commission.
Plaintiffs are 375 classified employees of the Department of Transportation and Development of the State of Louisiana. Defendants are the State of Louisiana, the Department of State Civil Service, the State Civil Service Commission, and David C. Treen, Governor of the State of Louisiana.
Plaintiffs allege that defendants implemented a pay adjustment in the Uniform Classification and Pay Plan for classified employees on May 1, 1979, which affected only 521 out of 2,442 existing classes of state employees and that plaintiffs were members of classes which were excluded from the pay adjustment. They allege that the exclusion was arbitrary and capricious and in violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution and of Article I, Section 3 of the Louisiana Constitution.[1]
The original plaintiffs represented a number of different Civil Service employment classifications. However, little or no evidence was adduced at trial pertaining to complaints from some of the plaintiffs, and the specifications of error urged on appeal address only the complaints of plaintiffs who are in the Clerical and Equipment Specialist classifications; therefore, only issues relating to these classifications will be considered.
Specifically, plaintiffs allege the following:
I) The maximum salaries of the non-competitive unskilled positions of Trades Helper and Equipment Operator I were arbitrarily and without reason increased by defendants causing said salaries to exceed the maximum salaries of the first four competitive skilled clerical positions.
II) The pay adjustment of May 1, 1979, implemented by defendants has resulted in plaintiffs who hold the positions of Equipment Specialist I being paid less than the personnel that they supervise.
III) The pay adjustment violates the requirement of a uniform pay plan required by Louisiana Constitution Article X, Section 10.

I.
We first address the question of whether certain plaintiffs were treated unequally. Mr. Wayne Stroud testified on behalf of plaintiffs. He had been with DOTD since November 2, 1966, and at the time of trial held the position of Clerk IV. Mr. Stroud was initially employed with DOTD as a Trades Helper. When he began his employment in that position, there was no educational requirement for the position; the only requirement was that he be able to follow oral and written directions. He took no examination for the position of Trades Helper. By passing a series of examinations and meeting other requirements, Mr. Stroud was promoted to the positions of Clerk I, Clerk II, Clerk III, and finally, Clerk IV. At the time of trial, he was in the anomalous position of making $5.00 a month less than a person who has reached the maximum salary in the position of Trades Helper, a position from which he was promoted many years before.
On May 1, 1979, Mr. Stroud was receiving the maximum salary a Clerk IV could obtain from the State. His salary was $987.00 a month. After the pay adjustment, the maximum salary for a Trades Helper was $992.00 a month, for an Equipment Operator *1278 I, $992.00, for Equipment Operator II, $1,094.00, for Equipment Operator III, $1,206.00, and for Equipment Operator IV, $1,329.00.
It was stipulated that the pay adjustment affected 521 classes out of 2,442 existing classes under the State Civil Service System. Equipment Operators and Trades helpers were included, and plaintiffs belonged to excluded classes. Therefore, the evidence is clear that not all classes were treated equally, viz., all classes did not receive comparable pay increases.
The question remains whether the difference in treatment of the different classes is supported by a rational basis.
The trial court found that there was a rational basis for increasing pay in some classifications and not others. The trial court found that before the increase, the salaries for positions included in the pay adjustment were far below the rate paid for similar jobs in private industry and that the salaries for positions excluded were already in line with market conditions (similar jobs in private industry). The trial court also found that before the adjustment, classifications included in the adjustment had more problems with recruitment and turnover than classifications not included. The trial court found that these factors provided a rational basis for the difference in treatment.
Plaintiffs contend that there is no rational basis for the difference in treatment of the positions of Equipment Operator I and Trades Helper and the four clerical positions. They contend that as for recruitment problems, the State was having problems recruiting skilled laborers, not unskilled laborers such as Equipment Operators and Trades Helpers. In support of this contention, plaintiffs point to testimony of Mr. George Hammer, Director of State Civil Service. In discussing recruitment problems, Mr. Hammer was asked whether he was primarily referring to trouble with "electricians, painters, skilled craftsmen?" Mr. Hammer responded, "That's exactly what I'm talking about." Plaintiffs also contend that turnover rates for Trades Helper and Equipment Operators are comparable to those for clerical classes.
Plaintiffs also argue that in using any data from private industry in comparing state salaries, the State should be acutely aware that most large private industries set wages for rank and file employees through labor negotiations that are based only partly on job content and are influenced by union and company clout and politics.
Defendants contend that the position of Trades Helper is an apprentice position and that it would be foolish to raise the Craftsman position salaries without raising the apprentice salaries. They argue that market conditions made it necessary to raise these salaries.
The right to equal protection under both the Fourteenth Amendment of the United States Constitution and Article I, Section 3 of the Louisiana Constitution applies to every kind of state action, whether by law or by the action or rules of an administrative agency. Spears v. Department of Corrections, 402 So.2d 203 (La.App. 1st Cir.1981).
Equal protection requires that state laws or rules and actions of an administrative agency affect alike all persons and interests similarly situated. However, persons or interests may be treated differently by an administrative agency if there is a rational basis for the differentiation which is reasonably related to a valid governmental purpose. Succession of Thompson, 367 So.2d 796 (La.1979).
In searching for a rational basis for differentiation in treatment, we do not agree with the trial court's finding that there were problems with recruitment and turnover for Equipment Operators and Trades Helpers. Mr. Reitzell, Chief of the Classification and Pay Division of the Department of Civil Service, testified that there were no recruitment problems in these classes, and, in fact, no recruitment data was kept on Equipment Operators and Trades Helpers. He also said that the turnover rate of these classes generally compared *1279 favorably to the turnover rate in the clerical classes.
The function of the Classification and Pay Service Division is to classify jobs in the state that come under the Civil Service Act and to establish pay ranges for these jobs. Mr. Reitzell testified that his division uses a number of surveys prepared by other agencies to adjust or set a pay range for a class. He also said the division makes frequent telephone calls to private industries, municipal governments, and to other states to get information. Mr. Reitzell said that in the past, Clerks had been paid more than Equipment Operators I and Trades Helpers, but that this was changed with the May 1, 1979, adjustment. He said that the decision not to raise the pay of Clerks was based on the same data used to determine that Equipment Operators and Trades Helpers needed a raise.
Mr. Reitzell further said that some of the factors considered in determining whether a pay adjustment is appropriate are "supply and demand, occupational trend, competition with private industry, prevailing wage rates." He said, "when the market conditions deem it necessary to adjust salaries whatever class they're in, we'd have to do it, we have services to be performed by the State." Also, Mr. Reitzell testified that, "if you raise the craftsman even in your union contracts, you raise the apprentice. It would be foolhardy to not raise them and raise your craftsman, then when they get promoted to craftsman, served the apprenticeship, give them a seven hundred dollar raise."
Mrs. Rita Cannatella was employed by the Department of Civil Service and kept records on special entrance rates. She testified that there were no problems recruiting Equipment Operators and that she assumed they were included in the pay adjustment because they were related to the maintenance trades.
We agree with plaintiffs that the evidence as to turnover rates and recruitment problems relied upon by defendants to support a raise for Equipment Operators and Trades Helpers is insufficient to justify giving them a raise and withholding one from the clerical positions. However, there are other considerations which do supply a rational basis for the distinction.
Rule 6.1 of the Civil Service rules reads as follows:
"6.1. Preparation of Pay Plan.
"The Director, after consultation with the appointing authorities and the State Fiscal Officer and after conducting such investigations and research as he may deem desirable, shall cause to be prepared for submission to the Commission a uniform Pay Plan or amendments thereto regulating the compensation to be paid all Classified Service State employees. In the preparation of a Pay Plan for the Classified Service or amendments thereto, the Director shall take into consideration the differences in pay in private business, industry, city and federal civil service systems; Federal rules, statutes, regulations and judicial decisions; and the availability of applicants in the different localities and areas of the State and may propose different rates in the different localities and areas."
Mrs. Cannatella was responsible for computing cost figures for pay range changes. She testified that she used the Federal Wage system regular wage rate schedule for New Orleans, Shreveport, and the Lake Charles-Alexandria area as a guide for the maintenance trades classes. She said that the other surveys used were consistent with the Federal schedule. Other surveys used were the IPMA (International Personnel Management Association Survey), the U.S. Civil Service State Salary Survey, the Department of Labor Area Wage Surveys, and numerous telephone surveys.
A separate pay plan was established for Maintenance Trades Classes in the May 1, 1979, pay adjustment. Defendants' witnesses testified that all of the surveys used by them indicated that rates of pay for State employees in the Maintenance Trades classes were lower than rates for private industry. The evidence indicates that although salaries for Equipment Operator and Trades Helper may not have been low, these classes were included in the pay adjustment *1280 because they fell logically within the overall Maintenance Trade class. The State not only has an interest in recruiting employees, it also has an interest in making the position attractive enough to retain those employees. For example, although the position of Trades Helper is a noncompetitive position with few requirements, it can be filled by a person who with training and experience can move upward into Craftsman positions. By offering competitive salaries, the State can attract those employees in whom an investment in training and experience will reap benefits through continued employment.
There was considerable testimony as to the importance of internal consistency in state salaries. Plaintiffs are particularly offended because they had to meet educational requirements that Trades Helpers did not have to meet. However, there are considerations other than education which determine whether one class is paid higher than another (one of which is the prevailing wage rate). Although the differences in rates in pay may seem unfair, they are supported by a rational basis and are therefore constitutional.

II.
Plaintiffs who hold the position of Equipment Specialist complain that they should be paid a higher salary than Equipment Superintendents because they supervise Equipment Superintendents. The job description of Equipment Superintendent reads: "[I]ncumbents work under the general supervision of Equipment Specialists." The job description of Equipment Specialist I states: "Functional supervision is exercised over district personnel who are engaged in activities concerning maintenance, design and repair of equipment."
The trial court did not render judgment on this issue and plaintiffs referred to it only casually in their brief. The testimony indicates that there are several different kinds of supervisory positions, with varying grades of authority. The record does not indicate that there is a direct line of authority between Equipment Specialists and Equipment Superintendent II. Mr. Gerald L. Ray, Maintenance System Engineer for DOTD, testified that Equipment Specialists do not supervise Equipment Superintendents.
Plaintiffs have offered no argument outlining how the treatment complained of is unconstitutional. In fact, the evidence does not support plaintiffs' claim that Equipment Specialists do supervise Equipment Superintendents. We will not supply plaintiffs' reasoning for them. We fail to see how the difference in pay for these different jobs is unconstitutional.

III.
Plaintiffs complain that the difference in salaries of Equipment Operators and Trades Helpers and the four clerical classes violate the constitutional requirement of a "uniform pay and classification plan."
Plaintiffs particularly argue that the principles enunciated in Sewerage and Water Bd. of New Orleans v. Barnett, 225 So.2d 381 (La.App. 4th Cir.1969), are applicable. In that case, the Council of the City of New Orleans approved a portion of a pay plan which gave a pay raise only to employees of the Sewerage and Water Board. Apparently, the Board, which operates with dedicated funds received in connection with its water, sewerage, and drainage functions under LSA-Const. Art. 14, § 23.1 et seq., had sufficient funds to pay its employees the salary increases, but the city did not have funds to pay salary increases to other employees of the classified service. The City Civil Service Commission refused to authorize implementation of the plan for Board employees. The Board sued for a mandamus directing the City Civil Service Commission to recognize and order the raise for Board employees. The trial court denied the mandamus, and the Board appealed. The Fourth Circuit affirmed the trial court finding that the Council's approval of the plan only insofar as it related to Board employees was in direct violation of the constitutional requirement of one uniform pay plan and the same schedule of pay for *1281 all positions in the same class.[2] The Court said the following at page 384:
"Under the above quoted constitutional provisions it is clear that all employees covered by Civil Service of the City of New Orleans, and this includes Sewerage and Water Board employees who are so protected, must be paid according to one uniform pay plan so that' * * * the same schedule of pay may be equitably applied to all positions in the same class.' To paraphrase a portion of the excellent reasons for judgment given by the trial judge: A major intent and purpose of Civil Service is to insure uniformity among employees covered thereby, to the end that such employees in a particular class will enjoy equal and uniform rights with others in the same class regardless of the department, agency, board or commission in which they may be employed. To permit employees of one department, agency, board or commission to receive a pay raise while other employees in other departments, agencies, boards or commissions, similarly classified and under the same Civil Service, receive a lower rate of pay does violence to that major intent and purpose of Civil Service. Neither the fact that the Board has sufficient funds to pay the proposed wage increases, nor the fact that the City is financially unable to do so, changes the law as written."
We agree with this decision that a uniform pay plan requires that the same schedule of pay must apply to all positions in the same class. After a thorough review of the records of the Louisiana Constitutional Convention of 1973, this court recently stated in Thoreson v. Dept. of State Civil Service, 433 So.2d 184 (La.App. 1st Cir.1983) that it was the desire of the delegates to the Convention and of those involved with Civil Service at that time to maintain the establishment of a uniform pay plan in the 1974 Constitution. We said that "the intent of the 1921 Constitution, the framers of the 1974 Constitution, and our jurisprudence has been to have the same schedule of pay for members of the same class." We further stated that to allow variations in pay schedules between *1282 employees in the same classification violates the Constitutional establishment of a unified and comprehensive classification and pay plan. However, neither of these cases stands for the proposition that all classifications must be treated equally at all times or that all classifications must retain their relative salary differentiation forever. A uniform pay plan does not require such consistency.
It is also important to note that in Thoreson v. Dept. of State Civil Service, supra, plaintiffs, Engineer Specialists III, sued the Department of State Civil Service maintaining that they were entitled to equal pay with employees in another classification known as Engineer III. The job description for the two groups were virtually the same, and the pay plan implemented by the Civil Service Commission was intended to provide identical pay scales for the two groups. However, partial implementation of the Pay Plan, on order of the Governor, disrupted the intended parity. We recognized the fundamental notion that employees who perform equal work should receive equal pay and that Engineer Specialists III should have been granted parity with Engineers III.
In neither of the situations presented to this court sub judice are the plaintiffs being denied equal pay for equal work. The issue of parity is therefore not before us.
Though we sympathize with the plight of the clerical workers, we cannot say that the raise in salary given to Equipment Operators and Trades Helpers is unreasonable. The Civil Service Commission has broad rule-making powers, and as long as its rules are reasonable and do not violate basic constitutional rights, they must be recognized and enforced by the court. Legros v. Dept. of Public Safety, Etc., 364 So.2d 162 (La.App. 1st Cir.1978), writ denied, 366 So.2d 562 (La.1979).
For the above reasons, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
NOTES
[1] The Equal Protection Clause of the 14th Amendment of the United States Constitution provides:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
Article I, Section 3 of the Louisiana Constitution provides in pertinent part:
"No person shall be denied the equal protection of the laws."
[2] The following constitutional provisions were in effect and relied upon by the court at 225 So.2d 383:

"(`The State and City Civil Service Commissions shall adopt:')
"`A classification plan, prepared and submitted by the Director or already in existence, requiring the classification of positions in the classified service according to similarity of duties performed and responsibilities assumed, so that the same qualifications may reasonably be required for, and the same schedule of pay may be equitably applied to all positions in the same class.' LSA-Const. Art. 14 § 15(1)(b). (Emphasis by Fourth Circuit)
"(`The State and City Civil Service Commissions shall adopt:')
"`Rules fixing minimum, maximum, and such intermediate rates of compensation as may be necessary, and establishing uniform pay plans and amendments thereof from time to time, * * * * * * * Each employee shall be paid at one of the rates set forth in the pay plan for the class of position in which he is employed. The rate of any employee at the time the original pay plan takes effect shall not be reduced by such pay plan. A pay plan, or amendments thereto, of the State shall become effective only after approval of the Governor; and a pay plan and amendments thereto for any city shall become effective only after approval by the governing body of said city.' LSA-Const. Art. 14 § 15(I)(C)." (Emphasis by Fourth Circuit)
The present constitution contains the requirement of uniform pay plan in La.Const. art. 10 § 10(A)(I), which reads as follows:
"Each commission is vested with broad and general rule-making and subpoena powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, compensation and disbursements to employees, and other personnel matters and transactions; to adopt a uniform pay and classification plan; to require an appointing authority to institute an employee training and safety program; and generally to accomplish the objectives and purposes of the merit system of civil service as herein established. It may make recommendations with respect to employee training and safety. Nothing herein shall prevent the legislature from enacting laws supplementing these uniform pay plans for sworn, commissioned law enforcement officers of the Division of State Police, Department of Public Safety and regularly commissioned officers of the Enforcement Division of the Department of Wildlife and Fisheries."