492 So.2d 27 (1986)
John LATONA, et al.
v.
DEPARTMENT OF STATE CIVIL SERVICE.
In re PUBLIC INVESTIGATION OF Herbert L. SUMRALL and Department of State Civil Service.
Nos. CA 85 0020, CA 85 0021.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
Rehearing Denied August 20, 1986.
Writ Denied November 14, 1986.
Richard C. Cadwallader, Baton Rouge, for appellants.
Robert R. Boland, Jr., Civil Service Legal Counsel, Baton Rouge, for appellee.
Before LOTTINGER, COLE and CRAIN, JJ.
COLE, Judge.
This appeal by a group of state employees asks this court to overturn the State Civil Service Commission's determination that employees classified as State Engineer III's should enjoy a higher pay level than Engineering Specialist III's. We decline to do so and affirm the Commission's decision.
We find the plaintiffs failed to allege specific facts that would tend to show the Commission's action was discriminatory to the plaintiffs or unreasonable.
The Civil Service Commission presented the statement of this appeal as follows:

*28 "On September 19, 1983, counsel filed a petition signed by more than one hundred forty employees of the Department of Transportation and Development who are allocated as Engineering Specialists III, wherein they complain of the implementation of the August 2, 1975 pay plan and wherein they complain that as a result of the amendment to the pay plan effective November 1, 1982, they lost parity with the class of Engineer III. Appellants assert that the petition is a class action filed on behalf of all permanent state employees allocated to the class of Engineering Specialist III; that the petition is filed as an appeal pursuant to Chapter 13 of the Civil Service Rules and as a request for investigation pursuant to Chapter 16 of the Civil Service Rules."
The Commission dismissed both the appeal and the request for investigation giving detailed, written reasons.
This appeal arises out of the amendment to a pay plan adopted on June 2, 1982, by the Commission in which the new class of State Engineer III was created with a pay range of $2,028 to $3,003 per month. This amendment was approved by the governor to be effective November 1, 1982. Thereafter, on August 15, 1983, the new class and pay plan were implemented in the Department of Transportation and Development.
It is the contention of the plaintiffs this August 15, 1983, implementation provides them with a right to appeal to the Commission the June 2, 1982 amendment to the pay plan on the authority of several Commission rules. As a substantive basis the plaintiffs object to the destruction of the parity which the Engineering Specialists III class formerly enjoyed with the Engineer III class as a result of this court's decision in Thoreson v. Department of State Civil Serv., 433 So.2d 184 (La.App. 1st Cir.1983), writs denied, 440 So.2d 726, 727 (La.1983). As a result of the implementation, the Engineer III class became allocated to the State Engineer III class and now is being paid pursuant to a higher pay scale.
The Commission contends it should not review its own actions in the operation of a new pay scale for the state engineers. The Commission argues it would be inappropriate to reconsider and rule on the efficacy of its own actions.

THE RIGHT TO AN APPEAL
Civil Service rules have the effect of law. La. Const. art. 10, § 10(A)(4); Thoreson, supra. If a rule is reasonable and not violative of basic constitutional rights, it must be recognized and given effect by the courts. Mayeux v. Dept. of State Civil Service, 421 So.2d 948 (La.App. 1st Cir. 1982). Civil Service Rule 13:34 reads as follows:
"No appeal to the Commission shall lie from the adoption by the Commission, after public hearing, of a Classification Plan, a Pay Plan, or of any Rule, or of any Amendment to said Plans or Rule."
In Clark v. Department of Transportation and Development, 413 So.2d 573 (La. App. 1st Cir.1982), the above quoted rule was held to be valid. We, as the court in Mayeux has done in a prior instance, adhere to the Clark decision, and find it dispositive of this action.
It is clear by analogy from the Mayeux decision the plaintiffs herein have no vested right to maintain parity with the class of State Engineers III. Civil Service Rule 1.6 defines class to mean:
"[O]ne or more positions in the Classified Service so nearly alike in essential characteristics as to warrant like treatment for all personnel purposes."
When the court in Thoreson found parity existed between the Engineering Specialists III and the Engineers III, in essence it found although they were attributed by name the status of two classes, they were by definition one "class." In Mayeux it was held to be a valid function of the Civil Service to establish two classifications of personnel out of one class so long as no discrimination has occurred. The jurisprudence is settled:

*29 "While there is no right to appeal classification and pay plans, an appeal may be considered by the Commission if `discrimination' is involved. Rule 13.10(i) allows an appeal if an employee alleges that he has been discriminated against by official action taken by the Director. Rule 13.10(e) allows an appeal if he alleges that he has been discriminated against by an application of the pay plan. * * * As such, the only basis for appeal which might be available to the appellant is that set out in Rule 13.10(i), which provides:
`An appeal may be made to this Commission by
(i) Any person who alleges that he has been discriminated against by any official action taken by the Director ...'
It is not sufficient to satisfy this rule that the appellant merely recite that a particular action of the Director was discriminatory. Pursuant to Rule 13.11(d), quoted above, specific facts delineating the discriminatory action must be alleged in detail." Mayeux at 950, 951.
Further, we note Civil Service Rule 1.14.1 defines discrimination to mean, "[C]onsideration of religious or political beliefs, sex, race, or any other non-merit factors." (Emphasis ours.) We find this definition to propose an examination of the newly formed classifications requiring an equal or even higher level of scrutiny than the equal protection of laws our state constitution would exact. In Sibley v. Bd. of Sup'rs of Louisiana State U., 4H1 So.2d 1094 (La. 1985), the court directs:
"Article I, Section 3 commands the courts to decline enforcement of legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest."at at 1107, 1108. (Emphasis ours)
The test employed by this court to discern whether the specific facts delineating discriminatory action have been alleged in detail will necessarily be inclusive of the Sibley analysis for equal protection. In this instance the inquiry into the allegations of the petition encompasses the scrutiny of facts which either satisfy or violate equal protection pursuant to the Sibley rationale.
The qualification requirements for the two classes at issue were set forth as exhibits to plaintiffs' petition and are as follows:
"STATE ENGINEER III
* * * * * *
MINIMUM QUALIFICATION REQUIREMENTS
Possession of a current Louisiana license to practice professional engineering.
* * * * * *
ENGINEERING SPECIALIST III
* * * * * *
MINIMUM QUALIFICATION REQUIREMENTS
Options will be established as follows: General (Office), Construction, Petroleum, Soil Sampling, Materials Testing, Drafting, Inspection, and Surveying. Additional options may be established or existing options deleted when appropriate.
Either of the following will qualify:
1. Eight years of experience in subprofessional engineering, two years of which must have been in highly advanced subprofessional engineering including one year equivalent to Engineering Specialist I and one year equivalent to Engineering Specialist II. Both years of the specialized experience must have included duties appropriate to the option for which application is made.

*30 2. Possession of a license to practice professional engineering in Louisiana.

SUBSTITUTIONS
College training with an average of six semester hours per college year in specialized course work such as architecture, geology, chemistry, physics, industrial technology, mathematics, or engineering may be substituted for a maximum of four years of the required general experience on the basis of thirty semester hours for each year of experience. A combination of the above listed courses will not be accepted.
General college training may be substituted for a maximum of six months of the required general experience on the basis of thirty semester hours for six months of experience.
Successful completion of a two-year engineering aid or civil technology curriculum offered by a trade or vocational technical school and approved by the Department of Civil Service may be substituted for a maximum of two years of the required general experience.
Full-time training in subprofessional engineering may be substituted for a maximum of eighteen months of the required general experience on a month for month basis."
The State Engineer III class requires a professional license, the Engineering Specialist III class allows as an optional minimum qualification requirement a professional license. An examination of the plaintiffs' petition discloses they do not allege any Engineering Specialist III members possess a professional license. This court has already recognized in Clark v. State, 434 So.2d 1276 (La.App. 1st Cir. 1983), writ denied, 440 So.2d 152 (La.1983):
"Equal protection requires that state laws or rules and actions of an administrative agency affect alike all persons and interests similarly situated. However, persons or interests may be treated differently by an administrative agency if there is a rational basis for the differentiation which is reasonably related to a valid governmental purpose. Succession of Thompson, 367 So.2d 796 (La.1979)." at 1278.
Cf. Mayeux at 952, for a juxtaposition of classification qualifications which were found to be devoid of discrimination.
We find there is a rational basis for the action of the Commission in creating the class of State Engineer III with a higher pay level than that of Engineering Specialist III and the basis is reasonably related to a valid governmental purpose. Certainly, the state has an interest in recruiting employees of a higher educational caliber and in making the position attractive enough to retain those employees. Although the functions performed by the respective classes may be the same in many instances, the person with the professional license undoubtedly has the capacity to render a greater and more varied service in the engineering field. It affords the employing agency more flexibility in job assignments and allows a greater reliance upon proper performance. If the plaintiffs had alleged some of their number also had professional licenses the specificity standard of 13.11 d would have been met. However, failing in this regard the plaintiffs have not demonstrated they are entitled to an appeal pursuant to 13.10 and its subheadings as an exception to the prohibition embodied in 13.34.[1] Accordingly, the judgment of the Civil Service Commission is affirmed.[2]
AFFIRMED.
NOTES
[1] La. Const. art. 10 § 12 expressly provides appeals from the Civil Service Commission must be taken to the appellate court. Flores v. State Dept. of Civil Services, 308 So.2d 393 (La.App. 1st Cir.1975), writ denied, 310 So.2d 855 (La. 1975). Therefore, this appeal is properly before this court.

Civil Service Rule 13.10 provides for an initial appeal to the Commission, prior to an appeal to this court, in several instances which may be construed to encompass the action complained of in this matter. These specific provisions for an initial appeal to the Commission derive from Civil Service Rule 2.9(f) which states,
"The Commission is empowered: To hear appeals from employees and others who claim their rights under these Rules and the Civil Service Article have been violated and to issue appropriate orders in such cases."
See Thoreson, 433 So.2d at 206.
Our examination of the Civil Service Rules as a whole reveals Rule 2.9(f) is merely a declaration of the general powers of the Commission and not a separate grant allowing for an appeal to the Commission as contended by plaintiffs. Further, Rule 2.9(f) is derived from the constitutional authority delegated to the Commission by La.Const.art. 10 § 8 which provides:
§8. Appeals
Section 8. (A) Disciplinary Actions. No person who has gained permanent status in the classified state or city service except for cause expressed in writing. A classified employee subject to such disciplinary action shall have the right of appeal to the appropriate commission. The burden of proof on appeal, as to the facts, shall be on the appointing authority.
(B) Discrimination. No classified employee shall be discriminated against because of his political or religious beliefs, sex, or race. A classified employee so discriminated against shall have the right of appeal to the appropriate commission. The burden of proof on appeal, as to the facts, shall be on the employee.
However, nowhere in the specific listing contained in art. 10 § 8(B) is the Commission empowered to hear an appeal on the basis that the implementation of a pay plan is discriminatory. While noting this deficiency, this Court is of the opinion whether the authority for us to hear this appeal stems from Rule 13.10 grounds or as a direct appeal on equal protection grounds from the implementation of the pay plan, without an initial appeal to the Commission, the end result is the same. As discussed in the text, the plaintiffs are not entitled to the relief they seek because the actions in implementing the pay plan taken by the Commission are valid. Therefore, we pretermit any discussion of this important question. See Thoreson, 433 So.2d at 206, 207, for one viewpoint.
[2] Because the actions of the Commission are deemed valid no investigation shall be necessary. Accordingly, this demand and all incidental demands of the plaintiffs are dismissed by this appeal.