J2REMY CHIASSON, Judge Pro Tem.
This is the second time these consolidated actions against the Louisiana Department of Social Services, Office of Community Services (OCS) have been before us. In Ramirez v. Department of Social Services, 603 So.2d 795 (La.App. 1st Cir.), writ denied, 608 So.2d 195 (La.1992), another panel of this court held that the Louisiana Civil Service Commission (Commission) had erred in refusing to hear the plaintiffs’ appeal for lack of jurisdiction because of the constitutional issues included therein. We noted that the Commission did not express an opinion on whether “educational attainment” was a “merit factor” upon which differences in pay within a class of civil service employees could be based. We reversed the Commission’s dismissal and remanded the ease for consideration of the plaintiffs’ claims that a pay plan based solely upon whether the employee possessed a master’s degree amounted to “non-merit factor discrimination.” We pre-termitted a discussion of any constitutional challenges raised by the plaintiffs.
After remand, counsel for the Department of State Civil Service (DSCS) filed a motion claiming, inter alia, that employees in the challenged class who possessed master’s degrees and were receiving the benefit of the special pay rates were indispensable parties to the suits. Thereafter, 188 employees in the jobs of Social Services Specialist 1 and 2 and Social Services Supervisor, the positions held by the plaintiffs, were made parties.
On September 14, 1993, a public hearing was held on DSCS’s motion for summary disposition on the grounds that if the plaintiffs showed there was no rational basis for granting special pay rates for those employees holding master’s degrees, then the remedy was to revoke the special pay, not to grant *1159 pay increases to the plaintiffs. By decision rendered October 13, 1993, the Commission ordered all employees who were receiving the benefit of the special rates at issue be added as parties. An additional 782 master’s degree employees were made parties.
A public heáring was held on November 6 through 8,1995. The Commission concluded the plaintiffs failed to show that OCS’s adoption of the special pay plan for employees holding master’s degrees did not further any appropriate state interest; that the state interest was the recruiting of employees with higher caliber of education and making the 1 ¡¡positions attractive enough to retain them. Accordingly, the Commission dismissed the plaintiffs’ appeals.
The Commission’s report provides background information. The OCS is the state agency that provides comprehensive social services to children and families, including child protection, foster care, day care, and adoption. By the end of the 1980s, OCS identified a need for more social workers with master’s degrees evidenced by the following factors: 1) legislation mandating that certain functions be provided by social workers with master’s degrees; 2) the ever-increasing complexity of cases being referred to OCS; 3) OCS’s loss of its few master’s degree employees to private practice; and 4) increased litigation which invariably focused on the training and credentials of the persons providing the services.
The OCS requested the DSCS to devise a plan to help recruit more social workers with master’s degrees. In response, DSCS conducted a study and presented a proposal, the “flexible maximum hire and retention rates,” [2] to the Commission. By January 10, 1990, the Commission had approved DSCS’s proposal, which became applicable to more than 60 social worker jobs. When this case started, plaintiffs all worked for OCS in one of three jobs: Social Services Specialist 1, Social Services Specialist 2, and Social Services Supervisor. These jobs were among the social worker jobs for which the flexible maximum hire and retention rates had been approved, but which did not apply to plaintiffs because they did not possess master’s degrees.
Following the hearing, the Commission found for a fact that the jobs of Social Services Specialist 1 and 2 and Social Services Supervisor are used by OCS throughout the state. Although some parishes have been successful in recruiting social workers with master’s degrees, others have not. Within each job classification, the duties of the em-ployeejjwith a master’s degree are generally indistinguishable from the duties of an employee with a bachelor’s degree. All employees within the same job classification are held to the same performance and quality assurance standards, and all are given the same initial and in-service training. However, there are some duties that can be performed only by someone with a master’s degree in social work (MSW) and some duties that can be performed only by a licensed social worker, who must have an MSW plus two years of additional training and who must pass an examination. When there is no MSW or licensed social worker available, the work is contracted out.
After hearing numerous and various witnesses testify as to the enhanced skills a person with a master’s degree brings to the tasks of the jobs at issue, the Commission observed:
The difference is not in the tasks being performed by employees with master’s degrees, but rather in the skill and ability derived from the additional education that *1160 the employee brings to bear on performing those tasks. To obtain an MSW, a candidate must complete 60 academic hours and 960 hours of clinical internship. As a result of this additional education, the MSW has a broader spectrum of knowledge from which to make decisions and more training in theory that cannot be gained through field experience. The MSW allows the employee to consider more factors in a case than could otherwise have been considered and therefore the MSW can assess the family situation more accurately and can better assess service delivery. Similarly, a master’s degree in a related field brings a broader knowledge base into the job. (Emphasis in original.)
Having made the above factual determinations, the Commission then observed that the Louisiana Constitution requires the adoption of a uniform pay plan, but that uniformity does not require that all individuals within the same class receive the exact same pay. Uniformity does prohibit the pay plan from making non-merit distinctions between members of the same class. The Commission concluded that the flexible maximum hire and retention rates satisfied the threshold requirement for uniformity because all employees in the same job class are assigned to the same pay range; the same schedule of pay applies to all employees in the job class, whether they have a master’s degree or not. However, as a result of the flexible maximum hire and retention rates, employees with a master’s degree start higher in the pay range and therefore get to the maximum of the pay range sooner. Thus, the issue the Commission had for determination on remand was whether this “advancement” constitutes non-merit factor discrimination against employees who do not have master’s degrees.
RThe Commission concluded that possession of a master’s degree in social work or a closely related field is a “compensable, merit factor.” The Commission noted that because the differentiation was not based on race or religious beliefs, birth, age, sex, culture, physical condition, or political ideas or affiliations, the proper standard of determining whether the plaintiffs, as members of an allegedly disadvantaged class, have shown discrimination was whether the differentiation does not suitably further any appropriate state interest. The Commission concluded that the plaintiffs failed to show a lack of appropriate state interest because “based on the evidence presented, ... the person with the master’s degree has the capacity to render a greater and more varied service in the social work field.... ” The Commission identified the state interest as “recruiting employees of a higher educational caliber and in making the position attractive enough to retain those employees.”
On appeal, plaintiffs claim the Commission erred in the following respects:
1. The Commission erred in failing to hold that the flexible maximum hire/retention rates approved by the Commission violated Article X, Section 10(A)(1) of the Constitution.
2. The Commission erred in failing to hold that a pay plan which pays extra pay based solely on the possession of a Master’s Degree constitutes non merit factor discrimination.
3. The Commission erred in failing to recognize that the possession of a Master’s degree cannot be a valid basis on which to grant extra pay where the minimum qualifications for the positions allow substitutions for the Master’s degree based on prior non-academic experience.
4. The Commission erred in failing to conclude that the flexible maximum hire/retention rates approved by the Commission results in employees within the same classification, doing the same job, with precisely the same specified and actual duties, responsibilities and functions, being paid differently solely due to possession of a Master’s Degree, irrespective of how they originally met the minimum qualifications for the job.
5. The Commission erred in failing to realize that the flexible maximum hire/retention rates approved by the Commission results in the merit factors of superior skill, proficiency and length of service being rendered inferior to the possession of the Master’s degree.
6. The Commission erred in failing to conclude that the flexible maximum *1161 hire/retention rates approved by the Commission violate the Constitutional requirement of equal pay for equal work.
7. The Commission erred in failing to conclude that the flexible maximum hire/retention rates approved by the Commission violate the Constitutional mandate of a uniform pay and classification plan. 168. The Commission erred in failing to recognize that there was a lack of evidence to justify differentiating salaries solely on the basis of possession of a Master’s degree.
9. The Commission erred in failing to recognize that the record lacks sufficient evidence to justify the original implementation of the rates and that the Commission’s affirmance of its actions in implementing the rates is arbitrary, capricious and characterized by an abuse of discretion.
In their brief to this court, the plaintiffs note that the nine errors assigned by them are variations of the same theme. The plaintiffs summarize them as follows: Where the Commission designates the possession of a master’s degree as the sole criteria for the entitlement to special pay but recognizes that length of service can be substituted for the master’s degree as a minimum qualification to the position, the Commission has admitted that length of service and a master’s degree are thus equally meritorious and to thus favor a master’s degree over length of service is by definition non-merit discrimination.” [Emphasis in original.]
The plaintiffs assert they should be given credit for years of experience in lieu of a master’s degree in order to qualify for the higher rate of pay, just as candidates for Social Services 1 and 2 and Social Services Supervisor are given credit for experience to meet the minimum qualifications for the respective positions.[3]
Plaintiffs’ argument is untenable for two reasons: first, it is based on the premise that a college degree is not a merit factor; second, it is based on the premise that experience can always be substituted for academic credits.
A college degree is objective evidence of a given amount of educational experience and attainment. Plaintiffs correctly point out that possession of a degree does not always result in a person bringing more skills to the job at hand than the person who does not possess a degree. However, this court has recognized, and we reiterate, that advanced education enhances the attributes of employees in a civil service classification and thus forms a rational chasis for differentiation between employees. See Latona v. Department of State Civil Service, 492 So.2d 27 (La.App. 1st Cir.), writ denied, 496 So.2d 1043 (La.1986).[4] We stated:
Certainly, the state has an interest in recruiting employees of a higher educational caliber and in making the position attractive enough to retain those employees. Although the functions performed by the respective classes may be the same in many instances, the person with the professional license [or advanced degree] undoubtedly has the capacity to render a greater and more varied service.... It affords the employing agency more flexibility in job assignments and allows a greater reliance upon proper performance.
492 So.2d at 30. Likewise, in the instant case, where it is a matter of record that some of the work of OCS had to be contracted out *1162 when persons with master’s degrees were not on staff, the enticement of employees with master’s degrees by hiring at greater pay forms a rational basis for the different treatment accorded those without degrees. We hold the Commission was correct in finding the possession of a master’s degree is a “merit” factor within the meaning of the constitutional provision.[5]
Plaintiffs’ argument that years of service should be substituted for the possession of a master’s degree in the flexible maximum hire and retention rates plan because it is allowed at entry level for Services Specialist 1 and 2 and Social Services Supervisor is equally without merit. If one were to carry out plaintiffs’ proposition to its logical conclusion, one would reach absurd results. If years of experience can be substituted for a master’s degree in all cases, why should more years of experience not be substituted for a bachelor’s degree, and then for even a high school diploma? Conceivably, we could have civil service employees with 30 years experience who had only completed the eighth grade.
Accordingly, we hold the Commission’s conclusion that the possession of a master’s degree is a valid merit factor in the pay plan at issue is correct. The flexible maximum hire and retention rates is a differentiation with a rational basis and is reasonably related to a valid governmental purpose. Because the plaintiffs have admitted in their brief in this appeal that |8their entire case rests on the alleged non-merit factor discrimination, which we have found does not exist, the constitutional challenges raised by plaintiffs are rejected for the reasons stated herein.
We affirm the decision of the Commission, and we east appellants with all costs of this appeal.
AFFIRMED.

. The proposal was a variation of "special entrance rate” explained in the Commission’s report as follows:
Every job in state service is assigned a pay range consisting of a minimum and a maximum rate. Ordinarily, a new employee must be hired at the minimum of the pay range. However, sometimes the minimum of the pay range is not adequate to recruit the type of candidate the agency wants. The primary tool for recruiting and retaining specialized training or experience is the special entrance rate. A special entrance rate is a rate within the pay range that is established based on market conditions and unavailability of applicants. A special entrance rate does not change the maximum of the pay range. Therefore, applicants who are hired at the minimum of the pay range and applicants who are hired at a special entrance rate can all ultimately earn the same pay — i.e. the maximum of the pay range. (Footnotes omitted.) (Emphasis in original.)

. The minimum qualifications for Social Services Specialist 1 are a master’s degree in social work or in a related field, or a bachelor of social work degree plus one year of professional social services experience, or any bachelor’s degree plus two years of professional social services experience.
The minimum qualifications for Social Services Specialist 2 are the same as above, except that with a master's degree, two years of professional social services experience is required and with a bachelor’s degree, three years of professional social services experience is required.
The minimum qualifications for Social Services Supervisor are the same as for Social Services Specialist 1, except that with a master’s degree, three years of professional social services experience is required, one of which must have been at the advanced level, and with a bachelor's degree, four years of professional social services experience is required, one of which must have been at the advanced level.

. The fact that the differentiation in Latona was between two classes of employees and the differentiation in the instant case is within a single class is immaterial; it is a distinction without a difference.

. The constitutional provision relied upon by-plaintiffs is La. Const. Art. 10 § 7, which provides in pertinent part:
Permanent appointments and promotions in the classified state and city service shall be made only after certification by the appropriate department of civil service under a general system based upon merit, efficiency, fitness, and length of service, as ascertained by examination which, so far a practical, shall be competitive.